UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CYNTHIA BARKER,

                          Plaintiff,                   13-cv-5521 (PKC)

        -against-                     MEMORANDUM
                                            AND ORDER

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                          Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

          Plaintiff Cynthia Barker appeals the decision of an administrative law judge ("ALJ") that denied her application for Supplemental Social Security Income ("SSI").  Barker alleges that she is unable to perform work due to mental health problems, including severe depression and bipolar disorder with paranoid features.

          The ALJ issued an eight-page written decision that denied Barker's SSI application.  He concluded that Barker had the severe impairments of bipolar disorder, obsessive-compulsive disorder, drug and alcohol abuse in early remission, panic disorder and personality disorder.  (Record at 25.)  However, he concluded that the required severity of the relevant listings was not met, and that Barker is not disabled and is capable of performing work.  (Record at 26-30.)  In reaching this conclusion, the ALJ afforded minimal weight to certain written observations by Barker's treating physician, and found that Barker had not testified credibly about her work history or impairments.  (Record 27-29.)

          Both the plaintiff and the Acting Commissioner of Social Security have filed motions for judgment on the pleadings, pursuant to Rule 12(c), Fed. R. Civ. P.  Neither has filed

a memorandum in opposition to the other's motion.  For reasons that will be explained, the Court concludes that the ALJ's decision is supported by substantial evidence and is based on a correct application of the law.  Barker's motion is therefore denied and the Commissioner's motion is granted.

BACKGROUND

A.  Barker's Benefits Application and the Commencement of the Hearing on June 20, 2011.

On November 27, 2009, Barker filed an application for disability benefits, which the Social Security Administration ("SSA") denied on April 9, 2010.  (Compl't ¶¶ 4-5; Record at 71-74.)  She then filed a request for a hearing before an ALJ on August 5, 2010.  (Record at 76-78.)

Barker's hearing commenced on June 20, 2011, before ALJ Robert Gonzalez. (Record at 37-46.)  Barker appeared on her own behalf, and the ALJ explained to Barker that she had a right to legal representation.  (Record at 37-38.)  When the ALJ asked Barker whether she understood her rights, she did not respond, and the ALJ stated, "You don't understand?  You're shaking your head no."  (Record at 38.)  Barker answered, "No," and asked the ALJ, "Should I have somebody? . . .  Because I didn't think that my paperwork was very complete last time and I was denied."  (Record at 39.)  The ALJ replied, "Right.  It's clearly not complete, and I'll be frank with you.  When I went over it there's very little in the way of medical evidence, so one of the things I was going to get through today is to find out where you've been treated, but that's a different aspect of the case, you know."  (Record at 39.)  The ALJ stated that he would "give [her] at least 20 days to get a representative."  (Record at 39.)  Barker confirmed that she would prefer not to go forward with the day's hearing, and wished to seek legal representation.  (Record at 39-40.)

The ALJ then asked Barker to identify the facilities where she received treatment, explaining that this information would expedite locating her medical records.  (Record at 40.) Barker identified certain facilities and individuals that had treated her, and the ALJ asked her to confirm her personal contact information.  (Record at 40-43.)  The ALJ again asked Barker to confirm that she understood her right to legal representation.  (Record at 42-45.)

The ALJ did not question Barker about her disability status during the June 20 proceedings.

B.  The Hearing's Continuation on October 11, 2011.

The hearing resumed on October 11, 2011.  (Record at 47-69.)  The claimant was represented by attorney Timothy S. McAdam.  (Record at 49-50.)  Barker was the only witness who testified at the hearing, and the ALJ questioned her about her illness and medical treatment. (Record at 50-68.)  She testified that she was receiving treatment on a consistent basis at Orange County Mental Health and was taking medications including Anafranil, Vistaril, Abilify, lithium, Ambien CR and Celexa.  (Record at 52-54.)  She stated that the medication "doesn't help me sleep or stay focused, but it minimizes my mood swings from severe depression to mania." (Record at 62.)  Barker stated that she previously abused drugs and alcohol, and "went extremely manic" in 2008 or 2009, including a suicide attempt through ingestion of alcohol, cocaine and Xanax.  (Record at 55.)

At that time, she began treatment at a facility identified as Occupations, and at Orange County Mental Health, and has not been hospitalized since.  (Record at 55-56, 58.)  She stated that she has not used illegal drugs since her suicide attempt.  (Record at 61.)  Barker also testified that in or around 2009, she had "an incident" related to depression and drinking that led

to her hospitalization.  (Record at 61.)  She testified that she has not been treated for substance abuse.  (Record at 62.)

Barker testified that she has problems with depression, anxiety, bipolar disorder and obsessive-compulsive disorder ("OCD").  (Record at 59.)  When the ALJ asked her to describe her OCD symptoms, she answered, "My mind races.  Like if I leave the house, I have to check like three/four times to see if my keys are in my pocketbook, rearranging things in the house.  It's hard for me to sit still, like I can't sit through a movie.  I'll notice something that looks out of place.  I have to fix it.  I have to fix things."  (Record at 59.)  She stated that her counselor was helping her to manage OCD through meditation.  (Record at 59.)

Barker testified that she last worked as a bartender 11 years earlier.  (Record at 56.)  She stated that she hadn't worked since that time because "I can't deal with the people." (Record at 57.)  She testified that her most recent job was at Golden Rail Ale House in Newburgh, but again stated that she hadn't worked since.  (Record at 57.)  She stated that she lived alone and covered expenses through alimony, food stamps, Medicaid and cash assistance. (Record at 57.)  She stated that she has received no professional training or certification, and was not seeking employment.  (Record at 66-67.)

Barker confirmed that her limitations were exclusively due to mental health problems and not physical ailments.  (Record at 58.)  She stated that she spent her typical day sleeping, watching television, listening to music and crocheting.  (Record at 59-60, 62.)  She keeps in touch with friends via telephone, and has two or three social visitors every two weeks, mostly related to visitations with her young daughter.  (Record at 60.)  She stated that she has one friend, who she sees approximately once a month.  (Record at 63.)  Barker testified that she

does not drive because driving frightens her, and that she relies on a neighbor for transportation to therapy sessions.  (Record at 63-64.)

The ALJ noted that the records from Orange County Mental Health were limited, and asked Barker and her attorney to seek additional documentation from the facility.  (Record at 64-65.)  In comments directed to Barker's counsel, the ALJ noted that, in regard to physician Thomas Van Aken, the record contained "just notes" from 2009, and stated, "I need to assess a little something more than that."  (Record at 67.)  Her counsel responded, "Yes.  There's just a few.  There's a few treatment notes, but not much."  (Record at 67.)  The ALJ later stated, "All right.  So I expect to see a lot of notes.  So what I'll do is I'm going to give you two weeks, but if you need more it won't be a problem to give you more time . . . ."  (Record at 68.)

C.  The ALJ's Written Decision.

On December 19, 2011, two months after the hearing, the ALJ issued a written decision that denied Barker's application for SSI, concluding that she had not been disabled under the Social Security Act since the date that she initially filed her application.  (Record at 23-30.)

The ALJ's decision explained the legal standard applied to determining SSI eligibility.  (Record at 24-25.)  At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b) & 416.920(b).  The ALJ concluded that Barker had not engaged in substantial gainful activity since at least November 27, 2009.  (Record at 25.)

At step two, the ALJ must determine whether the claimant has a severe, medically determinable impairment, or a combination of impairments that qualify as severe.  20 C.F.R. § 404.1520(c) & 416.920(c).  The ALJ concluded that Barker suffered from the severe

impairments of depression, bipolar disorder, panic disorder, personality disorder, OCD and drug and alcohol abuse.  (Record at 25-26.)  The ALJ noted that hospital records indicated cocaine and alcohol use by Barker in January 2010, despite her testimony that she had not used those substances since 2009.  (Record at 25.)  The ALJ concluded that these impairments limited Barker's ability to perform work, and therefore were severe.  (Record at 26.)

At step three, the ALJ must determine whether the impairment or combination of impairments meet the criteria set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(d).  The ALJ must then evaluate the claimant's residual function capacity, defined as the ability to do physical and mental work activity on a sustained basis, whatever limitations arise from those impairments.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  The ALJ concluded that Barker did not have an impairment or combination of impairments that equaled the severity of a listed impairment for listings 12.04, 12.06, 12.08 or 12.09.  (Record at 26-27.)  He observed that no treating or examining physician made findings equivalent to the severity of a listed impairment, and specifically did not establish at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functions; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation. (Record at 26.)  The ALJ concluded that Barker had only mild restrictions in daily living, mild difficulties in social functioning and moderate difficulties in concentration, persistence or pace. (Record at 26-27.)  He also concluded that Barker's episodes of decompensation did not rise to the level of a marked limitation.  (Record at 27.)

The ALJ next concluded that Barker had the residual functional capacity to carry out work at all exertional levels, and could understand, remember and carry out simple, unskilled work.  (Record at 27-29.)  He concluded that Barker's testimony about her capacity to work was

"not wholly credible." (Record at 28.) He observed that, although Barker testified that she had not worked for 11 years, medical records from 2008 indicated that she was working as a bartender two days a week. (Record at 28.) "This sharply contrasts with her testimony and undermines her overall credibility as she concealed her work activity from me when I inquired on that issue." (Record at 28.) The ALJ stated that Barker had "a poor work history," reflecting "sporadic work" and "a lack of motivation to work rather than due to her impairments . . . ." (Record at 28.) He also observed that "it may also be a product of concealing her work activity by working and not reporting her income." (Record at 28.) Separately, the ALJ reviewed inconsistencies between Barker's testimony and the treating medical notes. (Record at 28-29.) Her treating records showed that Barker would face some difficulties with occupational functioning, but that they did not preclude her from holding a job. (Record at 28-29.)

Her treating physician, Dr. Van Aken, noted on December 2, 2009 that Barker could not hold a job due to her symptoms, but the ALJ concluded that the doctor's overall records and Barker's history failed to support that assessment. (Record at 29.) The ALJ also afforded minimal weight to the assessments of a nurse practitioner, Linda Mason, who had treated Barker and concluded that she had a very limited ability to function. (Record at 29.) The ALJ stated that Mason "is not a recognized medical source," and that her assessment of Barker's limited abilities was contrary to a more recent, positive assessment that she made. (Record at 29.)

Finally, the ALJ concluded that Barker was capable of performing a job in the national economy. (Record at 30.) He concluded that Barker's ability to perform work at all exertional levels had been compromised by her limitations, but "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." (Record at 30.)

Barker appealed the ALJ's decision to the Appeals Council of the Social Security Administration, which denied her request for review.  (Record at 1-4.)  This action followed.

 STANDARD OF REVIEW.

A motion to dismiss under Rule 12(c), Fed. R. Civ. P., may be granted only if the movant establishes an entitlement to judgment on the pleadings as a matter of law.  Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995).  "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  Under Rule 12(c), the movant bears the burden of establishing "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."  Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (citations omitted) (alteration in original).

In reviewing a denial of benefits, if the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied . . . the court shall review only the question of conformity with [the] regulations . . . ."); see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).  A court may not review the Commissioner's decision de novo.  See Cage v. Comm'r of Soc. Servs., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).

A court's review thus involves two levels of inquiry.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).  First, the court must review "whether the Commissioner applied the correct legal standard," id., including adherence to applicable regulations, see Kohler, 546 F.3d

at 265.  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence.  Tejada, 167 F.3d at 773.

An ALJ's "[f]ailure to apply the correct legal standards is grounds for reversal." Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004) (quoting Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).  An ALJ's factual findings supported by substantial evidence are "binding" on a district court, but "where an error of law has been made that might have affected the disposition of the case," the Court cannot simply defer to the ALJ's factual findings.  Id.

In a Social Security case, the phrase "substantial evidence" "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is "a very deferential standard of review – even more so than the 'clearly erroneous' standard."  Brault v. Comm'r of Social Sec., 683 F.3d 443, 448 (2d Cir. 2012).  It is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."  Carroll v. Sec'y of Health and Human Services, 705 F.2d 638, 642 (2d Cir. 1983).  "[G]enuine conflicts in the medical evidence are for the Commissioner to resolve."  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  In particular, courts must show special deference to an ALJ's credibility determinations because the ALJ had the opportunity to observe the witnesses' demeanor while testifying.  Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).

Before deciding whether the Commissioner's determination is supported by substantial evidence, the reviewing court must first be satisfied that the claimant received "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act."  Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)

(citation and quotation marks omitted).  The ALJ has an affirmative duty to fully and fairly develop an administrative record.  Id.  This duty arises, regardless of whether the claimant is represented by counsel, from the fact that "a hearing on disability benefits is a non-adversarial proceeding . . . ."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).  "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel . . . .'"  Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting Perez, 77 F.3d at 47).  Accordingly, "the reviewing court must make a 'searching investigation' of the record to ensure that" the ALJ protected the claimant's rights.  Robinson v. Sec'y of Health and Human Servs., 733 F.2d 255, 258 (2d Cir. 1984) (citation omitted).  "If the reviewing court determines that a claimant did not receive a 'fair and adequate hearing' before the ALJ, it must remand the case to the Commissioner . . . ."  Watson v. Astrue, 2009 WL 6371622, at *5 (S.D.N.Y. Feb 4, 2009), adopted by 2010 WL 1645060 (S.D.N.Y. Apr. 22, 2010).  "A finding of gaps in the record or need for further development of the evidence is cause for remand."  Batista v. Chater, 972 F. Supp. 211, 217 (S.D.N.Y. 1997) (Sotomayor, J.) (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).

DISCUSSION

   I.   BARKER RECEIVED A FULL AND FAIR HEARING.

  As a threshold matter, the Court concludes that Barker received a full and fair hearing.  See generally Echevarria, 685 F.2d at 755.  As discussed, at the commencement of the hearing on June 20, 2011, the ALJ explained to Barker her right to representation, advised her on how to retain counsel and adjourned the hearing so that she could seek representation.  At both hearing dates, the ALJ noted the need for additional medical records, and directed Barker and her counsel on the steps needed to supplement the record.  The ALJ therefore carried out his

obligation to make a "searching investigation" of the record and to develop Barker's medical

history.  See Rosa, 168 F.3d at 79; Robinson, 733 F.2d at 258.

    II.      THE ALJ ACTED WITHIN HIS DISCRETION TO AFFORD LIMITED
WEIGHT TO THE VIEWS OF BARKER'S TREATING PHYSICIAN
AND NURSE PRACTITIONER.

       Barker argues that the ALJ failed to afford proper weight to the opinions of her

treating physician, Dr. Thomas Van Aken, and to a nurse practitioner, Linda Mason.  Both of

these individuals have opined that Barker is not capable of working.  Barker contends that the

ALJ failed to adequately weigh medical evidence, as well as the opinions of Van Aken and

Mason, when he determined that Barker does not have a combination of impairments that equals

a listed impairment, and that she has a functional capacity to perform work and is not disabled.

(Record at 26-30.)  Barker particularly emphasizes that the ALJ failed to consider the full extent

of Barker's bipolar disorder and depression.  (Pl. Mem. at 11-13.)

       In reviewing Van Aken's treatment notes, the ALJ emphasized certain positive

conclusions that he reached:  "Dr. Aken's records indicate that the claimant is generally stable

while on medication."  (Record at 28.)  "Dr. Van Aken noted on December 2, 2009 that the

claimant could not hold a job due to symptoms.  However, his overall records and the

longitudinal history fail to support such an assessment as many reports show normal mental

status examinations upon examination of the claimant."  (Record at 29.)

       Barker contends that the ALJ "override[d]" the views of Dr. Van Aken by not

affording sufficient weight to his view that she could not hold a job.  (Pl. Mem. at 12.)  Barker

notes the full text of Van Aken's notes dated December 2, 2009, which observed, "This patient

has severe depression and bipolarity.  She cannot work due to poor concentration and severe

mood swings and anxiety with violent thoughts."  (Record at 375.)  Barker cites other notes from

August 31 and December 2, 2009, which characterized Barker as "mind racing," and "depressed. Bad time of year . . . Has been manic to a mild degree.  Cannot hold job 2 fear and paranoia.  Cut self last week. . . . upset + depressed . . . ."  (Record at 377.)  Van Aken's notes often mentioned Barker's poor sleep and "mind racing," but also observed that she was "calm" and had "no mania."  (Record at 379-81.)  Barker contends that the ALJ failed to weigh her suicidal episodes, and that he ALJ improperly "was relying on his own credibility judgments, speculation, or his lay opinion."  (Pl. Mem. at 12-13.)

Generally, an ALJ is required to afford extra weight to the views of a treating physician because a treating physician has had frequent contact with a patient over a meaningful length of time.  Under SSA regulation, a treating physician is the claimant's "own physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.  Treating physicians "are likely to be the medical professionals most able to provide" a detailed understanding of an individual's medical status, and "may bring a unique perspective" that is not available "from the objective medical findings alone . . . ."  20 C.F.R. § 404.1527(c)(2).  Therefore, "[t]he opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." Mongeur v. Heckler, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983).

However, a medical opinion is entitled to significant weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1527(c)(2).  SSA regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record."  Schisler v.

Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).  "[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).  An ALJ "is required to provide 'good reasons' for the weight she gives to the treating source's opinion."  Id. at 32-33.  The SSA has listed factors to be considered when an ALJ determines the weigh to afford the views of a treating physician, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion."  Id. (citing 20 C.F.R. § 404.1527(d)(2)).

       To the extent that Van Aken opined that Barker was unable to work, the determination of whether a claimant is disabled or unable to work is a legal conclusion, and his opinion on the issue is not controlling.  See Johnson v. Colvin, 2015 WL 400623, at *8 (S.D.N.Y. Jan. 30, 2015); Guzman v. Astrue, 2011 WL 666194, at *10 (S.D.N.Y. Feb. 4, 2011); Snell, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").  "Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law."  20 C.F.R. § 416.927(e)(2).  Thus, the ALJ was not required to defer to Van Aken's legal conclusion about Barker's ability to work.

       The ALJ properly weighed Van Aken's assessments in light of the entire record. Van Aken's notes stated that medication helped control Barker's mania, that her condition was improving and that she was able to function.  (Record at 377-81.)  The ALJ also afforded weight to the conclusions of a consultative physician and a psychological expert, both of whom assessed

Barker.  (Record at 29.)  Leslie Helprin and T. Harding each evaluated Barker and did not find

marked limitations in her functioning.  The views of such medical consultants and advisors can

be afforded significant weight when supported by medical evidence in the record.  20 C.F.R. §

416.927(e).

   Dr. Leslie Helprin, a consultative physician, noted Barker's problems sleeping,

struggles with a "racing mind," concentration difficulties and history of suicidal behavior.

(Record at 266.)  Helprin observed that Barker had an appropriate appearance; an "[o]ften

tangential" thought process, but with no evidence of hallucinations, delusions or paranoia; mildly

impaired concentration and impaired memory skills; and below-average intellectual skills.

(Record at 267.)  Barker told Helprin that she is able to care for herself and socialize with

friends.  (Record at 268.)  Helprin concluded that Barker had psychiatric problems, but that they

did "not significantly interfere" with her ability to function on a daily basis.  (Record at 268.)

Helprin recommended that Barker continue with psychological treatment and undergo vocational

assessment and training.  (Record at 269.)  "Prognosis is considered to be good given above

treatments."  (Record at 269.)

   In a mental assessment dated April 8, 2010, Dr. T. Harding, a psychologist,

concluded that Barker was moderately limited in her ability to understand and remember detailed

instructions; carry out detailed instructions; accept instructions and respond appropriately to

criticisms; and set realistic goals or make plans independently of others.  (Record at 284-85.)

Harding did not find Barker markedly limited in any category, and found that she was not

significantly limited in 16 of the 20 designated categories.  (Record at 284-85.)  Harding

summarized Barker's history of drug and alcohol abuse and her struggles with anger

management and concentration.  (Record at 286.)  He noted that she was well dressed and

groomed and used appropriate eye contact; fluent, with a tangential thought process and no

indication of hallucinations or paranoia; and able to perform simple calculations and drive.

(Record at 286.)  Harding concluded that Barker "retains the ability to follow and understand

simple directions and instruction," "can perform simple rote tasks," "is able to maintain attention

and concentration," "make appropriate decisions and relate with others."  (Record at 286.)  He

found that the "[e]xtent of alleged limitations [was] not fully supported" by the examination.

(Record at 286.)

The ALJ also relied on Barker's Global Assessment of Functioning ("GAF")

score.  (Record at 29.)  In a 2008 examination, Dr. Joseph Cazbone concluded that "[h]er insight

and judgment are good," and that her "[t]hought processes are logical, linear, and goal-directed."

(Record at 339.)  He gave Barker a GAF score of 55.  (Record at 340.)  In an examination of

May 2010, Mason assessed a GAF score of 51-60.  (Record at 361.)  In 2010, a social worker

gave Barker a GAF score of 60, and the highest score that Barker received in 2010 was 65.

(Record at 385-86, 400.)  The ALJ noted that a GAF score in the 51-60 range is consistent with

"only moderate symptoms . . . ."  (Record at 29.)  The ALJ concluded that Barker's GAF scores

were "inconsistent with someone who cannot function."  (Record at 28.)

The Court concludes that there was substantial evidence to support the ALJ's

conclusion that Barker is able to perform work, and that it is based on a correct application of the

law.  As the ALJ noted, Van Aken's assessments about the severity of Barker's condition varied

somewhat, including observations that supported the conclusion that she was unable to work and

other observations that her condition was stable and improving.  However, the two consultative

reviews both concluded that Barker had only limited impairments, which did not preclude her

from working.  The ALJ appropriately weighed Van Aken's opinion, but concluded that it was

not entitled to controlling weight.  The ALJ based his conclusion on the evidence supporting Van

Aken's opinion, and the consistency of his opinion with the record as a whole.  20 C.F.R. §

404.1527(d).

   The ALJ also acted within his discretion in affording little weight to the opinion

of Mason, the nurse practitioner who treated Barker.  Mason completed two questionnaires,

dated May 19 and September 9, 2011.  (Record at 370-73.)  Many of her handwritten comments

are difficult to decipher.  (Record at 370-73.)  She stated that Barker "is unable to work due to

Chronic Bipolar Illness."  (Record at 371.)  In eight categories relating to Barker's limitations,

Mason found her either moderately or very limited in seven categories, with no limitations noted

for maintaining basic hygiene and grooming.  (Record at 371, 373.)

   The ALJ was within his discretion to afford minimal weight to Mason's opinion

about Barker's ability to work.  As previously noted, the ability to work is a legal conclusion for

the ALJ.  See, e.g., Johnson, 2015 WL 400623, at *8.  In addition, the relevant SSA regulation

does not list a nurse practitioner as one of the "[s]ources who can provide evidence to establish

an impairment," which are identified as physicians, psychologists, optometrists, podiatrists and

speech-language pathologists.   20 C.F.R. § 416.913(a).

   Based on the foregoing, this Court concludes that the ALJ weighed the views of

Van Aken and Mason in the context of the record as a whole, giving consideration to medical

evidence that both supported and contradicted their observations.  The ALJ's decision is

supported by substantial evidence and based on a correct application of the law.

III.    THE ALJ ANALYZED THE COMBINED EFFECTS OF BARKER'S
        IMPAIRMENTS UNDER THE CORRECT LEGAL STANDARD AND
        HIS FINDINGS ARE BASED ON SUBSTANTIAL EVIDENCE.

Barker also asserts that the ALJ failed to evaluate the combined effects of all

listed impairments that the ALJ identified.  (Pl. Mem. at 16-19.)  He argues that the ALJ

incorrectly concluded that she does not have an impairment, or combination of impairments, that

meets or equals the severity of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix

1, specifically as to listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders),

12.08 (Personality Disorders) and 12.09 (Substance Addiction Disorders).  (Record at 26-27.)

As noted, the ALJ concluded that Barker's severe impairments of bipolar disorder, OCD, drug

and alcohol abuse in early remission, panic disorder and personality disorder did not satisfy the

criteria of subpart B in Listings 12.04, 12.06 or 12.08.  (Record at 26.)  According to Barker, the

ALJ did not weigh the effect of Barker's personality disorder with her other impairments or the

effects of her problems with concentration.  (Pl. Mem. at 16-19.)

The ALJ followed the correct legal standard when determining that Barker did not

have the severity of listed impairments.  The structures of listings 12.04, 12.06 and 12.08 are

similar.  Paragraph A of each listing recites several relevant symptoms of each disorder.[1]  To

meet the required severity for each disorder, the claimant's symptoms under Paragraph A must

be accompanied by at least two criteria of paragraph B: "Marked restriction of activities of daily

living; or [m]arked difficulties in maintaining social functioning; or [m]arked difficulties in

maintaining concentration, persistence, or pace; or [r]epeated episodes of decompensation, each

of extended duration."  Listing 12.04(B)(1-4); 12.06(B)(1-4); 12.08(B)(1-4.).  Section 12.09 is

---

[1] By way of example, the Affective Disorders at Listing 12.04 requires medically documented symptoms for
depressive syndrome, manic syndrome and bipolar syndrome; for depressive syndrome, an applicant must have four
of nine listed symptoms; for manic syndrome, it is three of eight symptoms.  Listing 12.04(A)(1)(a-i), (A)(2)(a-h).

satisfied if the claimant shows "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system," combined with, among other provisions, the requirements of Listings 12.04, 12.06 and 12.08.

In addition to satisfying the combined criteria of paragraphs A and B, a claimant may, alternatively, establish a listed impairment under paragraph C of Listings 12.04 and 12.06. Under Listing 12.04(C), a claimant has a listed impairment if she has a medically documented history of affective disorder lasting at least two years, which has caused "more than a minimal limitation" to do basic work activities. Under Listing 12.06(C), a claimant has a listed impairment for an anxiety related disorder if she has a "complete inability to function independently outside the area of one's home."

The ALJ's written decision concluded that although the medical evidence substantiated the factors under paragraph A of the listings, Barker did not satisfy the criteria of paragraph B. (Record at 26-27.) The ALJ noted that Barker had only mild restriction in the activities of daily living, and told a consultative examiner on March 4, 2010, that she is able to care for her own personal needs, cook, clean, launder, shop, manager her money and drive locally. (Record at 26.) As to social functioning, the ALJ noted Barker's testimony that she has friends visit two or three times every two weeks, and that she was deemed cooperative and able to relate with others in her consultative examinations. (Record at 26.) The ALJ found that Barker had moderate difficulties with concentration, persistence or pace, but was able to complete simple calculations and counting exercises, and that she had no extended episodes of decompensation. (Record at 26-27.) He noted that to qualify as a severe disorder, a claimant needed three episodes of decompensation within one year, each lasting at least two weeks. (Record at 27.) The ALJ reviewed Barker's three hospitalizations in 2008 and 2009, and

concluded that the hospitalization of January 15, 2009 "was the direct result of alcohol and drug abuse and not an episode of decompensation for purposes of this assessment."  (Record at 27.)

The ALJ therefore found that Barker did not satisfy the criteria of any paragraph B provision of Listings 12.04, 12.06 and 12.08, and thus, implicitly, failed to also satisfy Listing 12.09.  (Record at 27.)  He also found that the evidence did not establish the paragraph C criteria. (Record at 27.)

Barker contends that the ALJ failed to consider the role that Barker's personality disorder played in her suicidal conduct, and to consider the combined effects of her panic disorder and agoraphobia.  (Pl. Mem. at 16-19.)  True, the ALJ did not recite all potential combined effects of Barker's disorders, but he noted her evidence concerning her "moderate difficulties" with concentration and discussed the effect of her prior suicidal behavior when reviewing her decompensation episodes.  (Record at 26-27.)  The ALJ did not overlook the evidence cited by Barker, but instead concluded that it was insufficient to support the conclusion that she suffered from a combination of impairments to meet a listed impairment.  This finding was supported by substantial evidence, and the Court will not disturb it.

IV.    THIS COURT DEFERS TO THE ALJ'S FINDINGS ON BARKER'S CREDIBILITY.

Barker contends that the ALJ's decision to afford limited weight to her testimony was based on "a serious misunderstanding of the facts," specifically as to the factors for weighing credibility detailed at Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (July 2, 1996).  (See Pl. Mem. at 19-23.)

SSR 96-7p lists certain factors to be applied when determining the credibility of an individual's descriptions of symptoms of a physical or mental impairment.  See 1996 WL 374186 at *1-2.  It requires an applicant's testimony concerning symptoms to be weighed in the

context of medically determinable evidence, as well as the entire case record.  Id.  "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Id. at *2.  "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  Id. at *4.  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  Id. at *5.

   As noted, the ALJ, and not the reviewing court, has the responsibility "to appraise the credibility of witnesses, including the claimant."  Carroll, 705 F.2d at 642.  Courts "must show special deference" to "explicit credibility findings . . . ."  Yellow Freight Sys., 38 F.3d at 81; see also Snell, 177 F.3d at 135 ("After all, the ALJ is in a better position to decide issues of credibility.").

   The ALJ concluded that Barker was not credible when she testified that she lacked the capacity to perform work.  (Record at 27-29.)  He cited 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3), which establish criteria for weighing non-objective evidence of medical symptoms, as well as SSR 96-7p, and stated that "there are several reasons why I find the claimant's allegations not wholly credible."  (Record at 28.)  First, the ALJ noted that, although Barker claimed that she had not worked in 11 years, her testimony was contradicted by the medical records.  (Record at 28.)  Specifically, an August 25, 2008 discharge summary from St. Luke's Cornwall Hospital stated that Barker "no longer intends to bar tend as she realizes that it is just not appropriate given her tendency towards addiction."  (Record at 339.)  It also stated, "She is working as a bartender but has not enough money.  . . .  She works as a bartender 2 times

a week." (Record at 341.)  Second, the ALJ stated that Barker's testimony about her psychiatric

limitations on working was inconsistent with her treatment notes.  Specifically, records showed a

current Global Assessment of Functioning ("GAF") score of 65, when a GAF score between 61-

70 reflected only mild symptoms or some difficulty in workplace functioning.  (Record at 28-

29.)  Third, Barker testified that she had not abused cocaine or alcohol since 2009, but that when

she was admitted to the hospital on January 15, 2010, admissions records indicated recent

alcohol and cocaine use.  (Record at 29.)  "Due to all of the above-discussed reasons, the

claimant's subjection complaints concerning her functioning and overall testimony are found not

to be fully credible."  (Record at 29.)

   The ALJ's credibility findings were directed toward Barker's testimony about her

inability to work.  In particular, the ALJ emphasized that hospital records contradicted Barker's

testimony that she had not worked in eleven years.  (Record at 28.)  At the hearing, the ALJ

closely questioned Barker about her assertion, and she repeatedly denied any recent work

history:

> Q. Okay.  Have you worked at all in any capacity since November of 2009?
> A. No.
> Q. And by that I mean any on or off the books?
> A. No.
> Q. Okay.  What kind of work have you done in the past?
> A. I've done bartending.
> Q. When was the last time you bartended?
> A. That was about 11 years ago.
> Q. Okay.  Have you done it since then at all?
> A. No. I can't.
> Q. You know, even a night here, a night there?
> A. I can't deal with the people.
>
> * * *
>
> Q. What was that you said how many years ago?
> A. About 11 years ago.
> Q. Okay.  And you never went back to work as a bartender there or anywhere else—

A. No.
Q. –for a couple of days a week since then?
A. (No verbal response.)
Q. I know that you're shaking your head no, but—
A. Oh, I'm sorry. No.

(Record at 56-57.)  Barker's unambiguous and repeated assertions were contradicted by hospital records from August 2008, which stated that "[s]he is working as a bartender" but "no longer intends to bar tend . . . ."[2]  (Record at 339, 341.)  The ALJ's finding that Barker lacked credibility concerning her work history was therefore consistent with the correct application of SSR 96-7p: he considered her testimony in the context of the entire case record and articulated "specific reasons for the finding on credibility," which were "grounded in the evidence and articulated in the determination or decision."  1996 WL 374186 at *1-2, 4.  "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  Id. at *5.

After explaining the inconsistency between Barker's testimony and the evidence concerning her work history, the ALJ noted other inconsistencies between her testimony and the evidence going to her ability to function and history of drug and alcohol use.  (Record at 28-29.)  However, the ALJ's finding that Barker gave non-credible testimony concerning her work history is particularly notable, since the ALJ made that finding as part of his analysis concerning her residual capacity to perform a full range of work.  The ALJ was best-positioned "to appraise the credibility of" Barker, and he made "explicit credibility findings" that were consistent with evidence in the record.  Carroll, 705 F.2d at 642; Yellow Freight Sys., 38 F.3d at 81.

---

[2] Although not noted by the ALJ, Barker also appears to have told Dr. Helprin that in or around December 2009, she worked as a cashier for more than one month, but stopped due to her psychiatric problems and inability to understand the cash register.  (Record at 265.)  She also told Dr. Harding that she had last worked as a cashier, but no employment date is provided in his notes.  (Record at 286.)

This Court therefore concludes that the ALJ correctly applied the law as to his findings of witness credibility, and defers to the ALJ's conclusions as a factfinder on his credibility determinations.

CONCLUSION

For the foregoing reasons, Barker's motion for judgment on the pleadings is DENIED and the Commissioner's motion is GRANTED.  (Docket # 15, 17.)  The Clerk is directed to terminate the motions and enter judgment for the defendant.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        March 12, 2015